### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| RANDY DONK,<br>GUN OWNERS OF AMERICA, INC.,<br>and GUN OWNERS FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>MICHELLE LUJAN GRISHAM, in her<br>official capacity as the Governor of<br>New Mexico, PATRICK M. ALLEN, in<br>his official capacity as the Cabinet Secretary<br>of the New Mexico Department of Health,<br>JASON R. BOWIE, in his official capacity<br>as the Cabinet Secretary of the New Mexico<br>Department of Public Safety, and W. TROY<br>WEISLER, in his official capacity as the<br>Chief of the New Mexico State Police,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COME NOW Plaintiffs Randy Donk, Gun Owners of America, Inc., and Gun Owners Foundation, by and through undersigned counsel, and allege as follows:

1.      Purporting to respond to recently declared "statewide public health emergencies" of "gun violence and drug abuse," New Mexico Governor Michelle Lujan Grisham and Department of Health Secretary Patrick M. Allen ("Defendants") have asserted the unilateral power to suspend constitutional rights and impose what is essentially martial law.  To that end, they have promulgated an executive order signed by the Governor on September 7, 2023, and thereafter a "public health emergency order" signed by the Secretary on September 8, 2023, that flatly eliminate the right to "bear arms" in public in various "cities or counties" within the State that meet a convoluted, multi-part test for levels of criminal activity.

1

2.      Aware that local authorities have publicly announced that they are unwilling to enforce this clearly unconstitutional edict, and have staunchly refused to participate in Defendants' scheme to deprive their constituents of their constitutional rights, Defendants have ordered the New Mexico State Police to act as a private army of stormtroopers to be sent *en masse* to enforce Defendants' open and notorious subversion of constitutional rights.

3.      There is no defense to Defendants' actions — legal, moral, or otherwise.  Their actions clearly and unambiguously violate the Second Amendment's protection of the right to "bear arms" that "shall not be infringed," and deprive law-abiding gun owners of their only means of self-defense from criminal attack while in public.  For that reason, this Court must end this unconstitutional charade before the train even leaves the station.

4.      To that end, Plaintiffs request an immediate Temporary Restraining Order be issued, on an emergency basis, followed by a preliminary and then permanent injunction, and also seek declaratory and other relief.  Moreover, because there is literally nothing that Defendants can offer as a legal defense to their blatant and egregious constitutional violations, Plaintiffs ask that a restraining order be issued *ex parte*, without any opportunity for Defendants to respond or be heard.

## I.      PARTIES

5.      Plaintiff Randy Donk is a natural person, a citizen of the United States and of the State of New Mexico, and resides in Bernalillo County, New Mexico.  He is a law-abiding person who currently possesses a valid New Mexico Concealed Handgun License ("CHL").  Plaintiff Donk carries a lawfully owned firearm for self-defense in public, both concealed and at times openly, on a daily basis.  Plaintiff Donk's daily activities take him throughout both Bernalillo County and the City of Albuquerque.  Plaintiff Donk will continue carrying his firearm in public throughout the City of Albuquerque and Bernalillo County, in spite of Defendants' unconstitutional edicts, placing

him at great risk of irreparable harm and even potential arrest and criminal prosecution (not to mention loss of his New Mexico CHL, seizure of his firearm, and further infringement of his right to "bear arms"). *See* Exhibit 3.

6.      Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-stock corporation with its principal place of business at 8001 Forbes Place, Springfield, VA 22151.  GOA is organized and operated as a non-profit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code.  GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners.  GOA has more than 2 million members and supporters across the country, including residents of the District of New Mexico and throughout the City of Albuquerque and Bernalillo County, many of whom lawfully carry firearms on a daily basis.  Many of these gun owners, like the individual Plaintiff, will be irreparably harmed by Defendants' blatantly unconstitutional attempt to unilaterally suspend the Second Amendment in public.  *See* Declaration of Erich Pratt, Exhibit 4.

7.      Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock corporation with its principal place of business at 8001 Forbes Place, Springfield, VA 22151.  GOF was formed in 1983 and is organized and operated as a non-profit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. GOF is supported by gun owners across the country and within this district who, like the individual Plaintiff, will be irreparably harmed by Defendants' "Public Health Order."

8.      Together, GOA and GOF represent the interests of many members and supporters who are being irreparably harmed by Defendants' unconstitutional firearms carry ban.  Moreover, (a) GOA and GOF's affected members and supporters each would have standing to sue individually to challenge Defendants' orders; (b) the interests GOA and GOF seek to protect are germane to their

organizational purposes; and (c) neither the claims asserted, nor the relief requested, require the participation of individual members and supporters in this lawsuit.

9.      Defendant Michelle Lujan Grisham is sued in her official capacity as the Governor of New Mexico.  Article V, Section 4 of the New Mexico Constitution vests Defendant Lujan Grisham with the state's "supreme executive power" and tasks her with taking care that the laws be faithfully executed.  Defendant Lujan Grisham oversees and exercises authority over the other Defendants in this action, with the unilateral power to remove and replace those who do not adequately implement her unconstitutional agenda.  Defendant Lujan Grisham may be served at the New Mexico State Capitol, 4th Floor, Room 400, 490 Old Santa Fe Trail, Santa Fe, NM 87501.

10.     Defendant Patrick M. Allen is sued in his official capacity as the Cabinet Secretary of the New Mexico Department of Health.  Appointed by the Governor and serving at her pleasure, Defendant Allen oversees the New Mexico public health system and its emergency response services and has the authority to issue public health emergency orders.  Defendant Allen may be served at the New Mexico Department of Health, Harold Runnels Building, 1190 South St. Francis Drive, Santa Fe, NM 87505.

11.     Defendant Jason R. Bowie is sued in his official capacity as the Cabinet Secretary of the New Mexico Department of Public Safety.  Appointed by the Governor and serving at her pleasure, Defendant Bowie oversees statewide law enforcement activities, including those of the New Mexico State Police.  Defendant Bowie may be served at the New Mexico Department of Public Safety, 4491 Cerrillos Road, Santa Fe, NM 87507.

12.     Defendant W. Troy Weisler is sued in his official capacity as the Chief of the New Mexico State Police, a division of the Department of Public Safety.  As State Police Chief, Defendant Weisler exercises, delegates, or supervises all the powers and duties of the New Mexico State

4

Police, the body responsible for executing and enforcing New Mexico's laws and regulations governing the carrying of firearms in public, and the entity explicitly tasked by the Governor and Secretary Allen with enforcing the unlawful actions challenged here. Defendant Weisler may be served at the New Mexico Department of Public Safety, 4491 Cerrillos Road, Santa Fe, NM 87507.

## II.   JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1651, 2201, 2202 and 42 U.S.C. §§ 1983 and 1988.

14.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## III.   STATEMENT OF FACTS

### a. Defendants' Unilateral Suspension of the United States Constitution.

15.     On September 7, 2023, New Mexico Governor Michelle Lujan Grisham signed into law Executive Order 2023-130 ("EO"), entitled "Declaring State of Public Health Emergency Due to Gun Violence."[1] Exhibit 1.

16.     First, the EO makes a series of "whereas" allegations about "gun violence" and "gun deaths" within the State of New Mexico. *Id.* at 1.

17.     Second, the EO declares that this state of events "constitutes a statewide public health emergency of unknown duration" and also "constitutes a manmade disaster threatening widespread physical or economic harm that is beyond local control." *Id.* at 2.

18.     Third, the EO orders the Department of Public Health, Department of Homeland Security and Emergency Management, and Department of Public Safety to "provide an effective and coordinated response" to the purported emergency. *Id.*

---

[1] https://www.governor.state.nm.us/wp-content/uploads/2023/09/Executive-Order-2023-130.pdf.

19.     Fourth, the EO sets aside $750,000 to be "expended for the purpose of complying with this Order." *Id.*

20.     Although the EO claims that this alleged public health emergency is "of unknown duration," the EO is effective until October 6, 2023. *Id.* at 3.

21.     The next day on September 8, 2023, acting pursuant to the mandates set forth by the EO, New Mexico Department of Health Cabinet Secretary Patrick M. Allen issued a "Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures" ("PHO").[2]  Exhibit 2.

22.     The PHO references the purported "gun violence" emergency in the EO, together with the "drug abuse" emergency announced in Executive Order 2023-132 (signed by the Governor on the same day as the EO), alleging that not only "gun violence" but also "drug abuse currently constitute statewide public health emergencies." *Id.* at 1.

23.     Claiming to "possess legal authority" pursuant to a series of New Mexico statutes, along with "inherent constitutional police powers," the PHO announces that Second Amendment rights will be suspended "for the duration of the public health emergencies declared in Executive Orders 2023-130 and 2023-132 and any subsequent renewals of those public health emergency declarations." *Id.* at 1, 3.

24.     Specifically, and as challenged here, the PHO declares "temporary firearm restrictions," namely that "no person … shall possess a firearm … either openly or concealed, within [certain] cities or counties." *Id.* at 1.

25.     Such restricted localities are to be determined by a two-part test in the PHO, if they (i) "averag[e] 1,000 or more violent crimes per 100,000 residents per year since 2021," and (ii) "more

---

[2] https://tinyurl.com/ycyyk6mz.

than 90 firearm-related emergency department visits per 100,000 residents from July 2022 to June

2023 according to the New Mexico Department of Public Health." *Id.*

26.     Although the Department of Public Health does not appear to have released data on

emergency room visits such that an ordinary person could determine which localities are covered

by the vague terms of the PHO, the Governor clarified that, "[a]s of Friday, that meant the order

only applied to the city of Albuquerque and Bernalillo County."[3]

27.     The PHO creates certain limited exceptions to its broad firearms ban.  First, the PHO's gun

ban does not apply to "a law enforcement officer or a licensed security officer." *Id.* at 1.  Second,

the PHO's gun ban does not apply "on private property owned or immediately controlled by the

person" with the firearm or "on private property that is not open to the public" (such as private

homes).  *Id.* at 2-3.  Third, the PHO's gun ban does not apply at gun stores, gunsmiths, shooting

ranges and similar events, or if traveling "to or from" a permissible location "provided that the

firearm is in a locked container and locked with a firearm safety device that renders the firearm

inoperable" and thus inaccessible for self-defense.  *Id.* at 2.

28.     Then, although already seemingly prohibited by its broad gun ban, the PHO bans firearms

specifically "on state property, public schools, and public parks." *Id.* at 3.

29.     The PHO provides that violations thereof "may be subject to civil administrative penalties

available at law." *Id.* at 3.  Such penalties, reportedly, "could include the loss of a permit to carry

a concealed firearm."[4]  However, when asked "how the order will be enforced and what the penalty

will be for violating it," Governor Lujan Grisham replied additionally that "we're likely dealing

with misdemeanors."[5]

---

[3] https://tinyurl.com/mrx5d8dy.
[4] *Supra* note 3.
[5] *Supra* note 3.

30.      With respect to *who* will enforce the PHO, local law enforcement has flatly refused to enforce Defendants' orders.[6]  For example, the Albuquerque Mayor's Office stated that "APD is not responsible for enforcing the governor's ban."[7]  Similarly, Bernalillo County Sheriff John Allen stated that "the temporary ban challenges the foundation of our constitution, which I swore an oath to uphold."[8]  Likewise, "Albuquerque police Chief Harold Medina said he won't enforce it."[9]

31.      Unfortunately, the fidelity of local officials to the Constitution is apparently no impediment to Defendants' plan, as the PHO seemingly anticipates such rebellion.

32.      Indeed, the Governor stated openly at her September 8, 2023 press conference that "[w]hat I have in the public health order is not agreed to by every member sitting at this table.  Nor was it developed with all of their expertise at the front."[10]

33.      Thus, the PHO instructs that "[t]he Department of Public Safety shall dispatch additional officers … to Bernalillo County."  *Id.* at 2.  Likewise, the Governor reportedly has claimed that these State Police officers will "enforce the order … because they're required to carry out executive orders."[11]  In other words, the Governor stands ready to send in her private army of stormtroopers to suppress constitutional rights and round up gun owners who dare to disobey her unilateral edicts.

34.      If Defendants' contempt for the Constitution was not clear on the face of the EO and PHO, Governor Lujan Grisham's further comments provide all the confirmation this Court needs.  At the press conference announcing the Governor's suspension of the Second Amendment and her

---

[6] Even anti-gun activist David Hogg thinks Defendants' unilateral suspension of the Constitution is a bridge too far. *See* https://tinyurl.com/2t8z2ubx ("I support gun safety but there is no such thing as a state public health emergency exception to the U.S. Constitution.").
[7] https://tinyurl.com/smfhcs83.
[8] https://tinyurl.com/bdenmx7r; *see also* https://tinyurl.com/bdxrkh67.
[9] https://tinyurl.com/bdenmx7r.
[10] https://www.youtube.com/watch?v=S9oLOubipXc, at 2:30.
[11] *Supra* note 3.

usurpation of queenlike powers, she stated, "if there's an emergency, and I've declared an emergency for a temporary amount of time, I can invoke additional powers. ***No constitutional right, in my view, including my oath, is intended to be absolute***."[12]

35.    As incredible proof of these executive actions' pretextual nature, the Governor even admitted that "***she doesn't expect criminals to follow the order***."[13]  And yet the Governor also knows that "[r]esponsible gun owners are certainly not our problem — have never been our problem," because *she said so herself*.[14]

36.    Of course, the Governor's paradoxical statements beg the question — if law-abiding gun owners are not the problem, and criminals carrying guns will not obey the PHO, then what is the purpose of the Governor's actions?  The answer is evident.  The EO and PHO serve no purpose other than to implement a radical political agenda to punish law-abiding gun owners for exercising their enumerated rights to carry arms in public for self-defense.

37.    Defendants have presented a credible threat of enforcement of their unconstitutional mandates against Plaintiffs.  Not only has the Governor specifically threatened criminal sanction but also her underlings have put plans in place to send State Police officers into Bernalillo County and the City of Albuquerque to enforce her edicts.

### b.  The Second Amendment.

38.    The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

---

[12] *Supra* note 10, at 32:03 (emphasis added).
[13] *Supra* note 7 (emphasis added).
[14] *Supra* note 3.

39.     In its landmark 2008 decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the

Supreme Court rejected the nearly uniform opinions reached by the courts of appeals, which for

years had claimed that the Second Amendment protects only a communal right of a state to

maintain an organized militia.  *Id.* at 581.  Setting the record straight, the *Heller* Court explained

that the Second Amendment recognizes, enumerates, and guarantees to ***individuals*** the preexisting

right to keep ***and carry arms for self-defense*** and defense of others in the event of a violent

confrontation.  *Id.* at 592.

40.     Then, in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Court explained that the

Second Amendment is fully applicable to the states through operation of the Fourteenth

Amendment.  *Id.* at 791.

41.     In *Caetano v. Massachusetts*, 577 U.S. 411 (2016), the Court reaffirmed its conclusion in

*Heller* that "the Second Amendment extends, prima facie, to all instruments that constitute

bearable arms, even those that we not in existence at the time of the founding," and that this

"Second Amendment right is fully applicable to the States."  *Id.* at 411.

42.     Finally, as the Court has now recently explained in *N.Y. State Rifle & Pistol Ass'n v. Bruen*,

142 S. Ct. 2111 (2022), the Second and Fourteenth Amendments together guarantee individual

Americans not only the right to "keep" firearms in their homes but also ***the right to "bear"***

***firearms in public for self-defense***.  *Id.* at 2122.

43.     Importantly, *Bruen* categorically rejected the judicially created "two-step" interest

balancing test that had run rampant through the lower courts after *Heller*, noting that, "[d]espite

the popularity of this two-step approach, it is one step too many."  *Id.* at 2127.  For that reason,

*Bruen* explicitly rejected the sort of public-safety justifications presented in the EO and PHO,

explaining that they have no role to play in the analysis of the scope of Second Amendment rights.

*Id.* at 2126 n.3 ("the right to keep and bear arms … is not the only constitutional right that has controversial public safety implications.").

44.     In other words, according to the Second Amendment's text, and as elucidated by the Court in *Bruen*, if a member of "the people" (here, Plaintiffs) wishes to "keep" or "bear" (here, carry in public for self-defense) a protected "arm" (here, a handgun), then the ability to do so "shall not be infringed."[15]  Period.  There are no "ifs, ands, or buts," and it does not matter (even a little bit) how important, significant, compelling, or overriding the government's ostensible justification for, or interest in, infringing the right may be.  It does not matter whether a government restriction "minimally" versus "severely" burdens (infringes) upon the Second Amendment.  There is no "balancing" or "multi-step" test, and there are no relevant statistical studies to be consulted.  There are no sociological arguments to be considered.  The historically ubiquitous problems of crime do not affect the equation and do not alter the Second Amendment's "unqualified command" as described by *Bruen*.  "The very enumeration of the right takes out of the hands of government — even the Third Branch of Government — the power to decide on a case-by-case basis whether the right is *really worth* insisting upon."  *Heller,* 554 U.S. at 634.

45.     Defendants' actions through the EO and PHO serve completely to eliminate this sacred, enumerated individual right.  For that reason, in this case **it is entirely unnecessary to proceed beyond the plain text of the Second Amendment and the direct holdings of *Heller* and *Bruen***.  Defendants have eliminated the right to bear arms for self-defense in public in Albuquerque and

---

[15] *See Bruen*, 142 S. Ct. at 2134 (citation omitted) ("It is undisputed that petitioners Koch and Nash — two ordinary, law-abiding, adult citizens — are part of 'the people' whom the Second Amendment protects.  Nor does any party dispute that handguns are weapons 'in common use' today for self-defense." … We have little difficulty concluding that … the plain text of the Second Amendment protects … carrying handguns publicly for self-defense. … This definition of 'bear' naturally encompasses public carry.").

Bernalillo County, and thus they have plainly infringed a right that "shall not be infringed."  Full stop.

46.      However, additionally and alternatively, *Bruen* teaches that "[t]o justify [a] regulation, the government may not simply posit that the regulation promotes an important interest" (such as the "gun violence" and "drug abuse" motivations espoused here).  142 S. Ct. at 2126.  "Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"  *Id.* at 2126.

47.      In reviewing the historical evidence, the *Bruen* Court cabined review of relevant history to a narrow time period, because "not all history is created equal," *id.* at 2136, focusing on the period around the ratification of the Second Amendment and perhaps the Fourteenth Amendment (but noting that "post-ratification" interpretations "cannot overcome or alter that text" and that "we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791").  *Id.* at 2137; *see also id.* at 2119-37 (discussing the lack of relevant historical prohibitions on carrying firearms in public).

48.      With respect to whether post-Founding historical sources have any role at all to play in the analysis, the Supreme Court technically left the question open, finding it unnecessary to its decision in *Bruen*.  142 S. Ct. at 2138.  Nevertheless, as the Court has repeatedly made clear, even prior to *Bruen*, Reconstruction-era historical sources are to be used (at most) only as confirmation of a historical tradition that was already in existence during the Founding.  For example, in *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020), the Court rejected the fact

that "more than 30 States" had enacted a certain type of legislation in the mid-to-late 19th century,

explaining that even such a pattern "cannot by itself establish an early American tradition." *Id.* at

2258-59; *see also Bruen*, 142 S. Ct. at 2137 (using 1800s sources only "as mere confirmation of

what the Court thought already had been established"); *id*. at 2163 (Barrett, J., concurring)

("[T]oday's decision should not be understood to endorse freewheeling reliance on historical

practice from the mid-to-late 19th century to establish the original meaning of the Bill of Rights.

On the contrary, the Court is careful to caution 'against giving postenactment history more weight

than it can rightly bear.'"); *Ramos v. Louisiana*, 140 S. Ct. 1390, 1396 (2020).

49.     The only appropriate inquiry then, according to *Bruen*, is what the "public understanding

of the right to keep and bear arms" was during the ratification of the Second Amendment in 1791,

and *perhaps* during ratification of the Fourteenth Amendment in 1868.  *Bruen*, 142 S. Ct. at 2138.

50.     Simply put, there is absolutely no broad and enduring historical tradition of entirely

banning the carrying of arms in public in an entire city or county.  But one not need take Plaintiffs'

word for it.

51.     There is no need for this Court to investigate whether there were any isolated Founding-

era restrictions on firearms carry, much less whether any such post-Ratification era laws existed in

sufficient duration, quantity, and breadth to establish a "historical tradition."  *Bruen* has already

performed the analysis, which is complete, and binding on this Court as to the question presented

here.  As the Court in *Bruen* explained, "there is little evidence of an early American practice of

regulating public carry by the general public."  *Id*. at 2142.

52.     As for Ratification-era laws, *Bruen* recounted that, "[i]n the early to mid-19th century,

some States began enacting laws that proscribed the concealed carry of pistols and other small

weapons."  *Id*. at 2146.  But far from supporting Defendants' actions here, the Court explained that

"these antebellum state-court decisions" in fact "evince a consensus view that ***States could not altogether prohibit the public carry of 'arms'*** protected by the Second Amendment."  *Id.* at 2147 (emphasis added).  Indeed, the Court concluded that "history reveals a consensus that States could not ban public carry altogether" (*id*. at 2146), as Defendants have done here.

53.     Finally, *Bruen* explicitly warned against using its "sensitive places" doctrine to "effectively declare" entire jurisdictions of limits for firearms carry.  *Id*. at 2118.  Yet that is precisely what Defendants have done here, declaring an entire city and county almost entirely off-limits to the public carry of firearms.[16]

54.     As the Court succinctly summarized, "American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense."  *Id*. at 2156.

55.     **That single statement is enough to resolve this case**.

56.     Defendants' actions are definitively foreclosed not only by plain text of the Second Amendment and the four corners of the *Bruen* opinion, but also by any required historical analysis that the Court already has performed and decided against Defendants.

57.     The only step that remains, then, is to enjoin and restrain Defendants' patently unconstitutional actions and edicts.

## COUNT I

[16] A number of other jurisdictions already attempted post-*Bruen* adoptions of broad restrictions on public carry in so-called "sensitive places" in name only. However, district courts have almost uniformly ruled these locational restrictions unconstitutional. *See Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 U.S. Dist. LEXIS 200813 (W.D.N.Y. Nov. 3, 2022); *Antonyuk v. Hochul*, No. 1:22-CV-0986 (GTS/CFH), 2022 U.S. Dist. LEXIS 201944 (N.D.N.Y. Nov. 7, 2022); *Christian v. Nigrelli*, No. 22-CV-695 (JLS), 2022 U.S. Dist. LEXIS 211652 (W.D.N.Y. Nov. 22, 2022); *Spencer v. Nigrelli*, No. 22-CV-6486 (JLS), 2022 U.S. Dist. LEXIS 233341 (W.D.N.Y. Dec. 29, 2022); *Koons v. Platkin*, No. CV 22-7463 (RMB/AMD), 2023 U.S. Dist. LEXIS 85235 (D.N.J. May 16, 2023); *Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 U.S. Dist. LEXIS 138190 (D. Haw. Aug. 8, 2023).  Defendants' actions here do not even pretend to be under the guise of banning the carry of firearms at "sensitive places," the only places carry may be banned under *Bruen*.  Rather, Defendants seek a naked repeal of Second Amendment rights in the city and county.

**U.S. CONST. AMENDS. II, XIV, and 42 U.S.C. § 1983**

58.     Plaintiffs re-allege the preceding paragraphs as if set forth in full.

59.     As quoted above, the Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

60.     The Second Amendment is applicable to the states through operation of the Fourteenth Amendment.

61.     The challenged Orders violate "the right of the people to … bear arms" protected by the Second Amendment.

62.     As the Supreme Court has explained, that protection includes the right of law-abiding Americans to carry handguns in public for self-defense.  The challenged Orders eliminate the ability to engage in that protected conduct.

63.     Additionally, the challenged Orders are without historical precedent, as there is no broad and enduring historical tradition – from any time period – completely banning the carrying of firearms in public.

64.     For each of these reasons, the challenged Orders violate rights that the Second Amendment states "shall not be infringed."

<b>PRAYER FOR RELIEF</b>

**WHEREFORE**, Plaintiffs request that relief be granted, and judgment be entered in their favor and against Defendants as follows:

1.     An order temporarily restraining, and/or preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or

participation with them who receive actual notice of the injunction, from enforcing the PHO and

EO ("the Orders");

2.      An order declaring that the Orders are unenforceable, unconstitutional, and

violative of the Second and Fourteenth Amendments to the United States Constitution;

3.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

4.      Nominal damages;

5.      Such other further relief as is necessary to effectuate the Court's judgment or that

the Court otherwise deems just and appropriate.

Dated: September 9, 2023

                                                        Respectfully submitted,

/s/ Mark J. Caruso                              Stephen D. Stamboulieh
Mark J. Caruso                                  Stamboulieh Law, PLLC
4302 Carlisle Blvd., NE                          MS Bar No. 102784
Albuquerque, NM 87107                            P.O. Box 428
(505) 883-5000                                   Olive Branch, MS  38654
mark@carusolaw.com                               (601) 852-3440
                                                 stephen@sdslaw.us
                                                 *Application for admission pending

                                                 Attorneys for Plaintiffs