IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| RANDY DONK,<br>GUN OWNERS OF AMERICA, INC.,<br>and GUN OWNERS FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>MICHELLE LUJAN GRISHAM, in her<br>official capacity as the Governor of<br>New Mexico, PATRICK M. ALLEN, in<br>his official capacity as the Cabinet Secretary<br>of the New Mexico Department of Health,<br>JASON R. BOWIE, in his official capacity<br>as the Cabinet Secretary of the New Mexico<br>Department of Public Safety, and W. TROY<br>WEISLER, in his official capacity as the<br>Chief of the New Mexico State Police,<br><br>Defendants. | Civil Action No. 1:23-cv-00772 |

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION, and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Purporting to respond to recently declared "statewide public health emergencies" of "gun violence and drug abuse," New Mexico Governor Michelle Lujan Grisham and Department of Health Secretary Patrick M. Allen ("Defendants") have asserted the unilateral power to suspend constitutional rights and impose what is essentially martial law. To that end, they have promulgated an executive order signed by the Governor on September 7, 2023, and thereafter a "public health emergency order" signed by the Secretary on September 8, 2023, that flatly eliminate the right to "bear arms" in public in various "cities or counties" within the State that meet a convoluted, multi-part test for levels of criminal activity.

Aware that local authorities have publicly announced that they are unwilling to enforce this clearly unconstitutional edict, and have staunchly refused to participate in Defendants' scheme to deprive their constituents of their constitutional rights, Defendants have ordered the New Mexico State Police to act as a private army of stormtroopers to be sent *en masse* to enforce Defendants' open and notorious subversion of constitutional rights.

There is no defense to Defendants' actions — legal, moral, or otherwise.  Their actions clearly and unambiguously violate the Second Amendment's protection of the right to "bear arms" that "shall not be infringed," and deprive law-abiding gun owners of their only means of self-defense from criminal attack while in public.  For that reason, this Court must end this unconstitutional charade before the train even leaves the station.

To that end, and because Plaintiffs and thousands of others like them will suffer serious and irreparable harm, not only to their constitutional rights but also potentially to their personal safety (by being disarmed in public), **Plaintiffs request an immediate Temporary Restraining Order be issued, on an emergency basis**, followed by a preliminary and then permanent injunction, and also seek declaratory and other relief.  Moreover, because there is literally nothing that Defendants can offer as a legal defense to their blatant and egregious constitutional violations, Plaintiffs ask that a restraining order be issued *ex parte*, without any opportunity for Defendants to respond or be heard.  As a federal district court in North Carolina ruled, even prior to *Bruen*, emergency declarations that suspend the Second Amendment are unconstitutional.  *Bateman v. Perdue*, 881 F. Supp. 2d 709 (E.D.N.C. 2012).

**I.      Introduction**

Plaintiffs' Complaint lays out the factual history underlying the challenged Orders:  first, Executive Order 2023-130 ("EO"), issued September 7, 2023 by the Governor, which declares a

public health emergency from firearm violence, and second, Defendant Allen's "Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures" ("PHO"), issued September 8, 2023, which purports to ban the possession of firearms in all public places within the City of Albuquerque and Bernalillo County.  Compl. ¶¶ 15-37.  Specifically, and as challenged here, the PHO declares certain "temporary firearm restrictions," namely that "no person … shall possess a firearm … either openly or concealed, within [certain] cities or counties."  Such restricted localities are to be determined by a two-part test in the PHO, if they (i) "averag[e] 1,000 or more violent crimes per 100,000 residents per year since 2021," and (ii) "more than 90 firearm-related emergency department visits per 100,000 residents from July 2022 to June 2023 according to the New Mexico Department of Public Health."  As Defendants clarify, this currently means the City of Albuquerque and Bernalillo County.  Compl. ¶ 26.

The PHO creates certain limited exceptions to its broad firearms ban.  First, the PHO's gun ban does not apply to "a law enforcement officer or a licensed security officer."  Second, the PHO's gun ban does not apply "on private property owned or immediately controlled by the person" with the firearm or "on private property that is not open to the public" (such as private homes).  Third, the PHO's gun ban does not apply at gun stores, gunsmiths, shooting ranges and similar events, or if traveling "to or from" a permissible location "provided that the firearm is in a locked container and locked with a firearm safety device that renders the firearm inoperable" and thus inaccessible for self-defense.  Finally, although already seemingly prohibited by its broad gun ban, the PHO bans firearms specifically "on state property, public schools, and public parks."

The PHO provides that violations thereof "may be subject to civil administrative penalties available at law."  *Id.* at 3.  Such penalties, reportedly, "could include the loss of a permit to carry

a concealed firearm." However, when asked "how the order will be enforced and what the penalty will be for violating it," Governor Lujan Grisham replied additionally that "we're likely dealing with misdemeanors."

Interestingly enough, Defendants appear to recognize the blatant unconstitutionality of their actions as, in taking the challenged actions, the Governor has foresworn her oath of office (Compl. ¶ 34), and local law enforcement flatly refuses to enforce her edicts, thus requiring Defendants to enlist a cadre of State Police officers to be sent to the affected areas in order to impose (presumably up to and including at the barrel of a gun) the Governor's will upon the people. *Id*. ¶¶ 30-34.

Plaintiff Randy Donk is a gun owner who resides just outside the City of Albuquerque, in Bernalillo County, New Mexico. Compl. ¶5. Mr. Donk is a law-abiding person who currently possesses a valid New Mexico Concealed Handgun License ("CHL"). Plaintiff Donk carries a lawfully owned firearm for self-defense in public, both concealed and at times openly, on a daily basis. Plaintiff Donk's daily activities take him throughout both Bernalillo County and the City of Albuquerque. Plaintiff Donk will continue carrying his firearm in public throughout the City of Albuquerque and Bernalillo County, in spite of Defendants' unconstitutional edicts, placing him at great risk of irreparable harm and even potential arrest and criminal prosecution (not to mention loss of his New Mexico CHL, seizure of his firearm, and further infringement of his right to "bear arms"). *See* Exhibit 3.

Plaintiffs Gun Owners of America, Inc. and Gun Owners Foundation are nonprofit organizations that exist to protect and preserve the Second Amendment right to keep and bear arms. With over two million members and supporters, GOA and GOF represent others who, like

Mr. Donk (a member of GOA), are affected and irreparably harmed by the operation of the challenged Orders.  *See* Declaration of Erich Pratt, Exhibit 4.

Without swift and decisive injunctive relief from this Court, Plaintiffs will be irreparably harmed not only through Defendants' egregious violation of their constitutional rights, but also potentially including threats to their personal safety, as Defendants' actions have deprived Plaintiffs of their ability to lawfully bear arms in public for their own self-defense, in the midst of what Defendants themselves style a public health emergency of violent crime in the city and county.

## II. Standard for Injunctive Relief.

To obtain a temporary restraining order or preliminary injunction, a "Plaintiff must establish that: (1) it has a substantial likelihood of prevailing on the merits; (2) it will suffer irreparable injury if it is denied the injunction; (3) its threatened injury outweighs the injury that the opposing party will suffer under the injunction; and (4) an injunction would not be adverse to the public interest."  *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1283 (10th Cir. 1996); *see also People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) ("The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order.").  "The likelihood-of-success and irreparable-harm factors are 'the most critical' in the analysis." *N.M. Cattle Growers' Ass'n v. U.S. Forest Serv.*, No. CIV 23-0150 JB/GBW, 2023 U.S. Dist. LEXIS 29056, at *33 (D.N.M. Feb. 22, 2023). Moreover, the third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. Plaintiffs Satisfy the Requirements for Injunctive Relief.

### A. Plaintiffs Are Exceedingly Likely to Prevail on the Merits.

"A 'substantial likelihood' [of prevailing on the merits] is defined as 'a prima facie case showing a reasonable probability that [the movant] will ultimately be entitled to the relief sought.'" *Peterson v. Kunkel*, 492 F. Supp. 3d 1183, 1194 (D.N.M. 2020). Plaintiffs more than meet this burden.

As outlined in Plaintiffs' Complaint, Defendants' unilateral suspension of the Second Amendment to the United States Constitution is entirely foreclosed by the amendment itself, *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Defendants' EO and PHO operate to prohibit the public carry of arms for self-defense in the entirety of public areas in the City of Albuquerque and Bernalillo County. *See* Compl. ¶ 26. Yet as the *Bruen* Court observed, "American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense." 142 S. Ct. at 2156. This observation alone is dispositive; Defendants simply cannot meet their burden of proving a broad and enduring early American tradition of outright prohibitions on public carry when this very issue has already been litigated and resolved against their position by this nation's highest Court.[1] Indeed, it is entirely unnecessary for this Court to proceed beyond the plain text of the Second Amendment and the four corners of the *Heller* and *Bruen* opinions.

---

[1] Other jurisdictions that have attempted to do piecemeal what Defendants now seek to do wholesale have met a similar fate, with district courts nearly uniformly striking down state bans on guns in a host of so-called "sensitive places." *See Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 U.S. Dist. LEXIS 200813 (W.D.N.Y. Nov. 3, 2022); *Antonyuk v. Hochul*, No. 1:22-CV-0986 (GTS/CFH), 2022 U.S. Dist. LEXIS 201944 (N.D.N.Y. Nov. 7, 2022); *Christian v. Nigrelli*, No. 22-CV-695 (JLS), 2022 U.S. Dist. LEXIS 211652 (W.D.N.Y. Nov. 22, 2022); *Spencer v. Nigrelli*, No. 22-CV-6486 (JLS), 2022 U.S. Dist. LEXIS 233341 (W.D.N.Y. Dec. 29, 2022); *Koons v. Platkin*, No. CV 22-7463 (RMB/AMD), 2023 U.S. Dist. LEXIS 85235 (D.N.J. May 16, 2023); *Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 U.S. Dist. LEXIS 138190 (D. Haw. Aug. 8, 2023).

And even though this Court need not engage in a *Bruen* analysis because it is already bound by these precedents (which are on all fours with the challenged Orders), Plaintiffs are substantially certain to prevail even if such a textual and historical analysis were to be relitigated. Plaintiffs are members of "the people" who carry handguns for self-defense in public. *See* Compl. ¶ 44 ("[I]f a member of 'the people' (here, Plaintiffs) wishes to 'keep' or 'bear' (here, carry in public for self-defense) a protected 'arm' (here, a handgun), then the ability to do so 'shall not be infringed.'"); *see also id.* n.15. Because Plaintiffs' course of conduct falls squarely within the Second Amendment's plain text, Defendants bear the burden of proving a broad and enduring Founding-era tradition of literally *eliminating* the right to bear arms in public. They cannot. Indeed, *Bruen* already reached this conclusion as well, noting that "there is little evidence of an early American practice of regulating public carry by the general public," and "antebellum state-court decisions evince a consensus view that States could not altogether prohibit the public carry of 'arms' protected by the Second Amendment." *Id.* at 2146-7. Again, since *Bruen* has already decided this question against Defendants, this Court need not look further than the Court's definitive pronouncements. As Defendants' actions and orders clearly violate the Second Amendment, Plaintiffs are highly likely to succeed on the merits of their claims.

B. **Plaintiffs' Constitutional Injuries Constitute Irreparable Harm.**

"Any deprivation of any constitutional rights," even for minimal periods of time, constitutes irreparable harm. *Peterson*, 492 F. Supp. 3d at 1199; *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). Moreover, the "theoretical ability to avoid a violation of … constitutional rights … does not alter the irreparable injury analysis." *Herrera v. Santa Fe Pub. Schs.*, 792 F. Supp. 2d 1174, 1183 (D.N.M. 2011). And, to the extent that there still remains a question in the Tenth Circuit as to whether irreparable-harm analysis requires mere allegations of constitutional harm or

a demonstration of likely violations, this Court need not address this question because constitutional violations are certain and presently occurring. *See Peterson*, 492 F. Supp. 3d at 1199.

Indeed, Defendants' EO and PHO impose civil and potentially criminal penalties for the exercise of an enumerated right. *See* Compl. ¶ 29 (citations omitted) ("The PHO provides that violations thereof 'may be subject to civil administrative penalties available at law.' Such penalties, reportedly, 'could include the loss of a permit to carry a concealed firearm.' However, when asked 'how the order will be enforced and what the penalty will be for violating it,' Governor Lujan Grisham replied additionally that 'we're likely dealing with misdemeanors.'"). Moreover, Defendants have expressed an unequivocal intent to enforce the PHO by "instruct[ing] that '[t]he Department of Public Safety shall dispatch additional officers … to Bernalillo County.'" Compl. ¶ 33. Active enforcement of the PHO via enlistment of State Police in response to widespread local opposition cannot make the certainty of constitutional violations clearer. *See id.* ¶¶ 30-33.

Because "[t]he likelihood-of-success and irreparable-harm factors are 'the most critical' in the analysis," Plaintiffs have easily demonstrated the necessity for a temporary restraining order to preserve and vindicate their constitutional rights. *N.M. Cattle Growers' Ass'n v. U.S. Forest Serv.*, No. CIV 23-0150 JB/GBW, 2023 U.S. Dist. LEXIS 29056, at *33 (D.N.M. Feb. 22, 2023).

**C. The Balance of Equities and Public Interest Overwhelmingly Favor the Plaintiffs.**

Plaintiffs' threatened injury — the elimination of their enumerated rights to carry arms for self-defense — outweighs any harm a restraining order or injunction would cause Defendants because Defendants face no harm whatsoever from a preservation of the status quo of constitutional order. Moreover, the public interest "favors preliminarily enjoining state statutes likely to be held unconstitutional." *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 771 (10th

Cir. 2010).  This factor is not an invitation to backdoor interest balancing; "there are no relevant statistical studies to be consulted.  There are no sociological arguments to be considered."  Compl. ¶ 44; *see also Bruen*, 142 S. Ct. at 2131 ("The Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense.").  Because the EO and PHO unconstitutionally infringe the right to keep and bear arms, "enjoining their enforcement is an appropriate remedy not adverse to the public interest."  *Utah Licensed Bev. Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001).

## Conclusion

As the challenged Orders are patently unconstitutional, definitively foreclosed by the Second Amendment's text and the Supreme Court's holdings, this Court should immediately grant an ex parte temporary restraining order without notice to Defendants or an opportunity for them to be heard, followed by a preliminary injunction preserving the status quo and Second Amendment rights.

Respectfully submitted,

/s/ Mark J. Caruso
Mark J. Caruso
4302 Carlisle Blvd., NE
Albuquerque, NM 87107
(505) 883-5000
mark@carusolaw.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
MS Bar No. 102784
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
*Application for admission pending

Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I Mark J. Caruso, hereby certify that I have on this day, caused the foregoing document or pleading to be mailed by United States Postal Service first-class mail, postage pre-paid, to the following non-ECF participants:

Michelle Lujan Grisham
New Mexico State Capitol
4th Floor, Room 400
490 Old Santa Fe Trail,
Santa Fe, NM 87501

Patrick M. Allen
New Mexico Department of Health
Harold Runnels Building
1190 South St. Francis Drive
Santa Fe, NM 87505

Jason R. Bowie
New Mexico Department of Public Safety
4491 Cerrillos Road
Santa Fe, NM 87507

W. Troy Weisler
New Mexico Department of Public Safety
4491 Cerrillos Road
Santa Fe, NM 87507

And by FACSIMILE to:

Attorney General Raul Torrez
408 Galisteo Street
Villagra Building
Santa Fe, NM 87501
Fax: (505) 490-4883

>*/s/ Mark. J. Caruso*
>Mark J. Caruso