## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| RANDY DONK, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>MICHELLE LUJAN GRISHAM, in her official capacity as the Governor of New Mexico, PATRICK M. ALLEN, in his official capacity as the Cabinet Secretary of the New Mexico Department of Health, JASON R. BOWIE, in his official capacity as the Cabinet Secretary of the New Mexico Department of Public Safety, and W. TROY WEISLER, in his official capacity as the Chief of the New Mexico State Police,<br><br>Defendants. | Civil Action No. 1:23-cv-00772-DHU-LF |

### PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION AS TO THE AMENDED PUBLIC HEALTH ORDER ISSUED SEPTEMBER 15, 2023

In support of their oral motion for preliminary injunction against the Amended Public Health Order of September 15, 2023 (Doc. 19-1; the "APHO"), made at the October 3, 2023 Hearing, and acknowledged by this Court's October 4, 2023 Order, Plaintiffs Randy Donk, Gun Owners of America, Inc., and Gun Owners Foundation ("Plaintiffs") submit this Supplemental Brief. As noted at the Hearing, Plaintiffs join in the request for injunction and the arguments presented by counsel in case number 1:23-cv-771-DHU-LF, and rely on Plaintiffs' initial Motion for Preliminary Injunction, Doc. 2, for background[1] and the applicable standard of review.

## I. THE APHO IS VOID-FOR-VAGUENESS, AS IT FAILS TO PROVIDE ORDINARY CITIZENS FAIR NOTICE OF ITS PROHIBITIONS AND INVITES ARBITRARY ENFORCEMENT

The APHO is unconstitutionally vague because it fails to provide adequate warning to individuals of ordinary intelligence as to where firearms carry is prohibited, especially regarding the term "other public area provided for children to play in." A law may be found unconstitutionally vague if it either fails "to provide a person of ordinary intelligence fair notice of what is prohibited" or, as an independent reason, "if it authorizes or even encourages arbitrary and discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *Hill v. Colorado*, 530 U.S. 703, 732 (2000). While often used in First Amendment cases, the "void-for-vagueness doctrine is embodied in the due process clauses of the Fifth and Fourteenth Amendments," and thus protects citizens against deprivation of any constitutional rights. *Voter Reference Found., LLC v. Balderas*, 616 F. Supp. 3d 1132, 1267 (D.N.M. 2022) (citing *Williams*, 553 U.S. at 304). Thus, when a law's "vagueness exerts a 'chilling effect'" on constitutional rights,

---

[1] As a preliminary matter, Plaintiffs continue to have standing. For example, Donk walks his dog in public parks, takes his grandchildren to local playgrounds, and visits numerous locations (such as malls, grocery stores, and fast food restaurants) that are open to the public and have "area[s] provided for children to play in." *See* Exhibit 1 at ¶¶ 4-11.

1

the doctrine "'demands'" the law provide "'a greater degree of specificity than in other contexts' and the [law] is tested for vagueness on its face." *Voter Reference Found., LLC*, 616 F.Supp. 3d at 1269 (quoting *Smith v. Goguen*, 415 U.S. 566, 573 (1974)).  The vagueness doctrine and considerations apply in the Second Amendment context as well because, "[t]he constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2156 (2022) (citation omitted).  Here, the APHO fails both independent vagueness analyses because it is so vague as to chill the Second Amendment activity of ordinary citizens and fails to give police officers sufficient guidelines to avoid arbitrary enforcement.

As was evident at the October 3 Hearing, even legal minds can vary greatly on interpreting what constitutes an "other public area provided for children to play in," with defense counsel discussing public pools and community centers, generally understood as places for *everyone* to play in, and which did not occur to plaintiffs' counsel who also questioned the applicability to sandlots and private play spaces open to the public.[2]  The word "other" excludes the parks and playgrounds previously listed, leaving the interpretation potentially as broad as one's imagination.[3]  And where only a portion of a facility is "provided for children to play," the APHO does not specify whether the prohibited "area" is just that portion or the whole facility (such as a grocery store with

---

[2] *See*, Clerk's Minutes, Doc. 22, at 7 and 9.
[3] Even the phrase "public are" is unclear, as it could refer only to locations owned, operated, and maintained by the government, or broadly to include private property open to the public (a splash pad at a shopping center, for instance). *See, e.g., Wolford v. Lopez,* No. CV 23-00265 LEK-WRP, 2023 U.S. Dist. LEXIS 138190, at *43 (D. Haw. Aug. 8, 2023).  And, although the text appears to govern only on *public* playgrounds, it likewise is unclear whether that applies only to government property, or more broadly to playgrounds on private property (such as at a church, or common property owned by an HOA).

coin-operated kiddie rides out front). Further, completely absent from the APHO's language is any requirement that clear signage be posted providing notice to visitors, or any guidance to law enforcement to prevent arbitrary or discriminatory enforcement. Worry that one may not recognize an "area" as such, or worse that an enforcing officer's imagination may be broader than one's own, will chill the exercise of citizens' right to bear arms in public for self-defense. The Secretary had ample opportunity to better enumerate a list of prohibited places but failed to do so. The APHO is thus unconstitutionally vague on both independent grounds as it (1) fails to give fair warning of its prohibition and (2) provides no guidelines to avoid arbitrary enforcement.

II. **THE AMENDED PHO IS REPUGNANT TO THE ORIGINAL PUBLIC UNDERSTANDING OF THE SECOND AMENDMENT.**

A. **Defendants Fabricate a Nonexistent "Traditionally Sensitive Places" Standard to Avoid Supporting Their Ahistorical Firearm Prohibition at Schools and Playgrounds.**

Defendants make the stunning claim that, "[i]n the context of 'sensitive places,' the Court is not required to engage in any historical analysis … because 'some gun-free zones are simply obvious, undisputed, and uncontroversial.'" Opp. at 15. In other words, Defendants urge this Court to latch onto untested dicta (that the Supreme Court expressly warned was untested) and overrule the standard of review of *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), adopting in its place an indeterminate "know it when you see it" approach. Neither case supports such revisionism. Although the *Heller* Court speculated that some prohibitions may be "presumptively lawful" based on their "longstanding" tenure, 554 U.S. at 626, 627 n.26, it did not exempt *any* prohibitions from its textual and historical standard of review—quite the opposite, the Court explicitly welcomed challenges to all such restrictions, noting that "there will be time enough to expound upon the historical justifications for

the exceptions we have mentioned if and when those exceptions come before us." *Id.* at 635. *Bruen* likewise provided no exemptions to its analytical structure.

Accordingly, Defendants have failed to bear their historical burden to support a sweeping firearm prohibition at all "schools," regardless of type, much less playgrounds (which Defendants erroneously analogize to schools), which were not mentioned in *Bruen* or *Heller*. Nor is the mere presence of children "in large numbers," Opp. at 15, a hallmark of any so-called "sensitive place." *See Bruen*, 142 S. Ct. at 2134 (already rejecting "expanding the category of 'sensitive places' simply to all places of public congregation"). Instead, "sensitive places" are, at most, "typically secured locations[] where uniform lack of firearms is generally a condition of entry" and "where a bad-intentioned armed person could disrupt key functions of democracy." *Hardaway v. Nigrelli*, 636 F. Supp. 3d 329, 346 (W.D.N.Y. 2022). Absent these hallmarks, individuals must protect themselves, and a categorical firearm ban is invalid.

**B. Defendants Utterly Fail to Evince an Enduring Early American Tradition of Prohibiting Firearms in Public Parks.**

Defendants cite *Md. Shall Issue, Inc. v. Montgomery County*, No. TDC-21-1736, 2023 U.S. Dist. LEXIS 117902 (D. Md. July 6, 2023), in a seeming adoption of all of the historical analogues discussed therein. At the outset, it is not this Court's "oblig[ation] to sift the historical materials for evidence to sustain" Defendants' Amended PHO. *Bruen*, 142 S. Ct. at 2150. But to the extent Defendants rely on irrelevant Reconstruction-era city ordinances to shed light on the original public understanding of the Second Amendment as adopted in 1791, such reliance is misplaced.

Via *Md. Shall Issue*, Defendants reference—but conveniently omit their dates—a dozen city ordinances regulating firearms in parks from 1857 to 1917, and two state laws from 1905 and 1919. Opp. at 17–18; *Md. Shall Issue*, 2023 U.S. Dist. LEXIS 117902, at *36–37. But absent a

Founding-era tradition *to confirm*, these late-in-the-game "analogues" are wholly irrelevant. And "[a]s with … late-19th-century evidence, the 20th-century evidence presented … does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 142 S. Ct. at 2154 n.28. Indeed, while the *Bruen* Court acknowledged "an ongoing *scholarly* debate" as to the pertinent historical time period for originalist analysis, *id.* at 2138 (emphasis added), the Court's own precedents have already established Founding-era primacy, and the secondary (if at all), merely confirmatory relevancy of the Reconstruction-era. *See id.* at 2137 (treating 19th-century evidence "as mere confirmation of what the Court thought had already been established"); *id.* (rejecting "'postratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text'"); *see also Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2258–59 (2020) (rejecting evidence of late-19th-century laws from "more than 30 States" because "[s]uch a development … cannot by itself establish an early American tradition"). Finally, Defendants cite laws from territorial New Mexico (1869) and Texas (1871) in a last-ditch effort to cobble together a tradition that never existed. *See Bruen* at 2154 (categorically rejecting ordinances passed by territories). But the New Mexico law operated as a total ban on public carry, Opp. at 18, the sort of ban that already has been found unconstitutional. *See Bruen*, 142 S. Ct. at 2134 (noting zero historical basis for declaring Manhattan a "sensitive place"). That leaves Defendants' Texas law, which made *no mention of parks whatsoever*.[4] Altogether, Defendants have failed to bear their historical burden. Just like its initial version, the Amended PHO violates the Second Amendment and must be enjoined.

Respectfully submitted,

---

[4] *See* https://tinyurl.com/23dep8mb, at § 3.

Dated: October 6, 2023

/s/ Anthony R. Napolitano
Anthony R. Napolitano
Bergin, Frakes, Smalley & Oberholtzer, PLLC
4343 E Camelback Rd, Ste. 210
Phoenix, AZ 85018
(602) 848-5449
anapolitano@bfsolaw.com

Mark J. Caruso
4302 Carlisle Blvd., NE
Albuquerque, NM 87107
(505) 883-5000
mark@carusolaw.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
MS Bar No. 102784
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day, caused the foregoing document or pleading to be file with this Court's CM/ECF system which generated a notice and delivered a true and correct copy to all counsel of record.

/s/ Shelly Curry